Dear District Attorney Morvant:
You have requested an opinion from this Office regarding the ability of Lafourche Parish to use certain dredged spoil from a navigable water bottom of the State for various purposes. In order to appreciate your specific questions, a review of the scenario that you presented is warranted.
According to your opinion request letter, Lafourche Parish ("the Parish") intends to dredge 20,000 cubic yards of spoil from Bayou Lafourche ("the Bayou") to facilitate the construction of a salt water control structure in the Bayou that will assist in controlling the intrusion of salt water into the Parish's drinking water supply. The Parish would like to use 10,000 cubic yards of the dredged material for levee and drainage projects. The Parish would like to use the other 10,000 cubic yards of dredged material to exchange with a private company for the costs of storing and curing the entirety of the dredged material. From this scenario, you have presented this Office with the following questions:
 1) Is it permissible for the Parish to keep one-half of the dredged material and for the Parish to enter into an agreement with a private company for the storage of the dredged material?
 2) Is it permissible for the Parish to allow that private company to retain one-half of the dredged material for its own use or for possible sale to a third party?
It is the opinion of this Office that the answers to both of those questions are in the negative. *Page 2 
The answer to your first question has largely been addressed in a previous opinion from this Office. La. Atty. Gen. Op. No. 05-0222. As La. Atty. Gen. Op. No. 05-0222 notes, dredged material from the navigable water bottoms of the State is considered to be State property. That opinion considered sand and gravel dredged from the State's water bottoms to fall into the category of "other mineral" under La.R.S. 30:209. As with any other mineral deriving from State lands — of which there is no question that the State has an interest — these "other minerals" that come from dredging activities must also be owned by the State.[1]
Accordingly, it is axiomatic that sand and gravel dredged from State water bottoms does have intrinsic value and, due to the prohibitions against donations embodied in La.Const. Art. VII, Sec. 14(A), such materials cannot be given away without adequate compensation.[2]
Accordingly, the Parish keeping those materials without some sort of remuneration to the State would be an unconstitutional donation of State property under La.Const. Art. VII, Sec. 14(A). Further, any transfer of such materials to a private entity without remuneration would also be violative of the Louisiana Constitution.
It is possible, however, that the benefits that may be received by the State for the provision of fresh water to the residents of lower Lafourche Parish may support such a transfer of State property. However, this would be a deal that would have to be brokered between the State and the private entity, as the Parish has no rights to the dredged material at issue.
It should be noted, however, that the ownership of dredged material by the State does not mean that the Parish cannot do the dredging. It simply means that the benefits from the use of the dredge material must inure to the State rather than the Parish. Irrespective of this reality, the requirements of La.R.S. 56:2011, et seq. must be followed in any dredging operation that takes place on a State water bottom. This law provides, in pertinent part, that,
 No fill sand nor fill material shall be dredged from the water bottoms of this state without a license issued by the Louisiana Department of Wildlife and Fisheries.
La.R.S. 56:2011 (A). Accordingly, any planned dredging of Bayou Lafourche by the Parish must be accomplished pursuant to a permit from the Louisiana Department of Wildlife and Fisheries ("DWF"). *Page 3 
In furtherance of the Parish's plans to use the dredged material both for infrastructure projects and to offset the costs of curing and storing the material, it would seem prudent for the Parish to contact DWF and the Louisiana Department of Natural Resources' ("DNR") Offices of Mineral Resources and Coastal Management to negotiate a cooperative endeavor agreement among the Parish, the State, and the private entity for the accomplishment of your stated goals. A cooperative endeavor agreement would, if constructed pursuant to actual benefits to be realized by the public entities for their expenditures of time and property, be an efficient means of complying with the constitutional requirements implicated in this matter. See, La.Const. Art. VII, Sec. 14(A) and (C).
In answer to your second question, we offer the following from La. Atty. Gen. Op. No. 05-0222:
 Should the State Mineral Board elect to enter into an agreement wherein fair and adequate value is paid by the parish for the transfer of the sand and/or gravel or a benefit is received by the Board that is commensurate with the value of the transferred property then such an agreement would be authorized and would not require public bid and advertisement.
Accordingly, it is the opinion of this Office that, should the value of the services provided by the private entity be commensurate and should the State agency or agencies with an interest in the dredged material enter into a cooperative endeavor agreement with the private entity for such services, that public bidding and advertisement for such a project would not be necessary. See also, La. Atty. Gen. Op. No. 02-0475. In addition, it is further our opinion that, under the circumstances outlined above that properly comply with State law related to dredged material, a private entity could retain a portion of such material for its own use.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY:__________________________ RYAN M. SEIDMANN Assistant Attorney General
 JDC/RMS/tp *Page 1 
CHARLES E. FOTI, JR.
ATTORNEY GENERAL
 APRIL 27, 2005 Opinion Number 05-0022
90-A-1 Public Funds Contracts
Article 7, Section 14 of the Louisiana Constitution
Greater Baton Rouge Port Commission may accept stock as payment of a debt.
Mr. Stephen W. Glusman, Attorney for the
Greater Baton Rouge Port Commission
GLUSMAN, BROYLES GLUSMAN, LLC
P.O. Box 2711
Baton Rouge, LA 70821-2711
Dear Mr. Glusman:
The Greater Baton Rouge Port Commission questions if it may receive the common stock of a reorganized company as payment of a debt owed to the Port. The Port also questions by what procedure may it sell the stock it receives and further questions if it may sell its claim prior to the time it receives the stock.
In this instance, the Port is owed a debt by a private entity. The entity filed for bankruptcy in January of 2004. The Port filed a proof of claim and the entity objected to the Port's claim. The Bankruptcy Court resolved the objection by placing the Port's claim into the pool of unsecured debt. The bankruptcy reorganization plan results in the unsecured debtors each receiving a percentage of common stock of the entity. The plan has been approved by the Bankruptcy Court. Thus, the Port will receive the stock as payment of a debt. It will not hold the stock for investment purposes. Rather, it plans to liquidate the stock as quickly as possible.
Article 7, Section 14A of the Louisiana Constitution prohibits the state or any of its political subdivisions from loaning, pledging, or donating anything of value to any person, association, or corporation. It also prohibits the state from subscribing to or purchasing the stock of a corporation, association or any private enterprise. The purpose of this constitutional prohibition of subscribing to or purchasing stock is to disallow the use of public funds for private investment.[1]
The Port is not subscribing to or purchasing the stock for investment purposes. Rather, it will accept the stock as payment of a debt due as ordered by the Bankruptcy Court. It is our opinion, therefore, that the Port may accept the stock. To do otherwise may violate Article 7, Section 14 of the Constitution because the Port would be giving up its claim, something of value, when it is under no obligation to do so. That prohibition is at the heart of Article 7, Section 14. *Page 2 
You question if the Port must utilize Louisiana's public bid laws should it decide to sell the stock it receives. In short, we do not believe the public bid law would apply in this instance. You indicated that generally the Port does not sell stock directly. It sells the stock through a broker pursuant to a professional stock sale contract. Contracts for services, professional or otherwise, are not required to be bid under the public bid law.[2] We believe the hiring of a broker is a contract for professional services. Our office recommends that although there is no specific method for the award of contracts for services the Port use a request for proposals to evaluate potential contractors.[3]
It is also our opinion that the Port may sell its bankruptcy claim. We understand that the Bankruptcy Code specifically allows for this. We do note that the value of the claim should be commensurate with the price in light of Article 7, Section 14 of the Constitution.
With kindest regards,
Yours very truly,
CHARLES C. FOTI, JR.
Attorney General
BY:__________________________
TINA VICARI GRANT
Assistant Attorney General
 CCF, jr./TVG/dam *Page 1 
RICHARD P. IEYOUB
ATTORNEY GENERAL
 JANUARY 9, 2003 OPINION NUMBER 02-0475
90 — A — PUBLIC FUNDS CONTRACTS
Article VII, Section 14 of Louisiana Constitution
Political subdivision may pay for removal of trees located on public property by giving wood generated by tree removal only if value of wood is equal to the value of services rendered.
Honorable Ava Nell McWhorter, Mayor
Village of Dixie Inn
60 Shell Street
Minden, LA. 71055
Dear Mayor McWhorter:
You have requested an opinion of the Attorney General on the question of whether it would be legal for the Village of Dixie Inn to barter for the removal of thirteen trees located on Village property by giving the wood generated from the removal as payment in full.
Article VII, Section 14 of the Louisiana Constitution provides:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private.
The Village of Dixie Inn is a political subdivision of the State of Louisiana and is subject to the constitutional provision prohibiting the donation of public property. The Louisiana Supreme Court has ruled that this provision is violated whenever a public entity gives up something of value when there is no legal obligation to do so. City of Port Allenv La. Municipal Risk Agency, 439 So.2d 399 (La. 1983). Guided by this interpretation of the law the payment in kind for the removal of the thirteen trees located on Village property can be legally accomplished if, and only if, the value of the wood given the contractor is equal to the value of the services rendered.
We trust that this answers your inquiry.
Very truly yours,
RICHARD P. IEYOUB
ATTORNEY GENERAL
BY:__________________________
RICHARD L. McGIMSEY
Assistant Attorney General
RPI/RLM/dam
[1] This proposition is also supported by La.R.S. 31:4, which applies the provisions of the Louisiana Mineral Code to "rights to explore for or mine or remove from land the soil itself, gravel, shells, subterraneanwater, or other substances occurring naturally in or as a part of thesoil or geological formations on or underlying the land" [emphasis added]. These solid minerals would not have been included in the coverage of the Mineral Code had the Legislature not intended for such to be considered minerals.
[2] The proposition that dredged materials are the property of the State and have intrinsic value is also supported by Ronald AdamsContractor, Inc. v. State ex rel. Dept. of Wildlife Fisheries, 2000-1490 (La.App. 1 Cir. 9/28/01), 807 So.2d 881.
[1] Louisiana State Employees' Retirement System, et al, 423 So.2d 73(La.App. 1st. Cir. 1982), writ denied, 427 So.2d 1206.
[2] Lafourche Parish Water District No. 1 v. Carl Heck Engineers,Inc. 346 So.2d 769 (La.App. 1st Cir. 1977)
[3] Attorney General Opinion No. 02-0152.